UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| O&M HALYARD, INC.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>ARK GBST, LTD.,<br><br>　　Defendant. | CIVIL ACTION NO.<br>1:20-CV-04600-JPB |

## ORDER

This matter comes before the Court on O&M Halyard, Inc.'s ("Plaintiff") Motion for Default Judgment [Doc. 17]. This Court finds as follows:

## BACKGROUND

Plaintiff is a manufacturer and distributor of surgical and medical instruments and personal protective equipment ("PPE"). [Doc. 1, pp. 3–4]. On September 19, 2019, Plaintiff and Ark GBST, Ltd. ("Defendant") entered into a Distribution Agreement (the "Agreement"), under which Defendant became an authorized distributor of Plaintiff's PPE within the Caribbean region.[1] Id. at 5. The Agreement contained terms and conditions for Defendant's orders, including

---

[1] This region encompassed Antigua and Barbuda, Trinidad and Tobago, Turks and Caicos, The Bahamas, Cayman Island, Guadalupe, Haiti and Martinique. [Doc. 1-1, p. 6].

prices and payment, as well as the parties' obligations and various warranties. Id. Under the Agreement, Defendant agreed to "comply with all of [Plaintiff's] terms and conditions applicable to the Products, which [Plaintiff] provides to [Defendant]." [Doc. 1-1, p. 9]. The Agreement also provided that breaching "any of the [listed] representations, warranties, or undertakings will constitute a material breach of this Agreement and provide valid cause for Termination of this Agreement by [Plaintiff]." Id. at 10. The Agreement included the following provision related to payment: "[Defendant] shall pay [Plaintiff] in accordance with terms of sixty (60) days Ex Works and the terms set out in the invoices submitted to [Defendant] and otherwise comply with all of [Plaintiff's] terms and conditions applicable to the Products, which [Plaintiff] provides to [Defendant]." Id. Finally, either party could terminate the Agreement upon a material breach of any of its terms "by the other [p]arty if the breach is correctable but is not corrected within thirty (30) calendar days after written notice to the defaulting [p]arty of the breach." Id. at 14.

Defendant also signed a Credit Application in connection with the Agreement and in light of the parties' new business relationship. [Doc. 1, p. 6]. Under the terms of the Credit Application, Defendant "agreed to pay all debts incurred within the terms of [Plaintiff's] sale[s]" to Defendant, in addition to

paying "collection costs of past due amounts, including court costs and attorney's fees." Id. at 6–7. The Credit Application also provided that overdue amounts would be "subject to an interest charge of 1 ½% per month or the highest rate allowable by law, not to exceed 1 ½ %." Id. at 7. Additionally, because Plaintiff and Defendant did not have a longstanding business relationship, Plaintiff placed Defendant's account on credit hold the day after the Agreement was executed. Id. at 8. Plaintiff would remove the credit hold once Defendant demonstrated an ability to comply with the sixty-day payment terms specified in the Agreement. Id. Defendant's account remained on credit hold for the duration of its business relationship with Plaintiff. Id.

In the weeks after the Agreement's execution, Plaintiff processed Defendant's first two PPE orders, which had a net value of over $375,000. Id. at 7. Defendant placed several subsequent orders in October and November 2019 and in February, March, May and June 2020. Id. at 7–11. Those orders ranged in value from $85,000 to over $2.1 million. Id. at 10. Defendant made various payments toward those orders in October, November and December 2019 and in February, March, April, May, June and July 2020. Id. at 8–11. However, despite these payments, Defendant's account consistently had a past-due balance. See id. at 10–11 (noting that Defendant owed $440,000 at the end of March 2020; $400,000 at

3

the end of April; $350,000 at the end of May; and $300,000 at the end of June). Plaintiff informed Defendant of its past-due balances on multiple occasions in the spring of 2020.  Id. at 10.  Plaintiff delayed the processing and shipment of orders to Defendant pending its compliance with the 60-day payment obligation and eventually stopped shipping orders until Defendant paid for orders that it had already received.[2]  Id. at 11.  Defendant had an outstanding balance of $238,645.36 at the end of July 2020 and has not since made any payments toward that amount. Id.  On November 7, 2020, Plaintiff ended its business relationship with Defendant in light of Defendant's "failure to fulfill its obligations of timely payment under the . . . Agreement."  Id. at 12.  Plaintiff sent Defendant a termination letter per the terms of the Agreement.  Id.

Plaintiff sued Defendant for breach of contract on November 10, 2020.  Id. at 13.  Plaintiff alleges that Defendant breached its contractual obligation to pay Plaintiff within sixty days of delivery of its orders and according to the Agreement's terms and conditions.  Id. at 13–14.  Plaintiff seeks compensatory damages for the alleged breach; costs and expenses for the action, including

---

[2] On April 7, 2020, the Federal Emergency Management Agency instituted a four-month ban on foreign exports, including exports to the applicable Caribbean region, of certain PPE. [Doc. 1, p. 11].  This ban further limited Plaintiff's ability to ship products to Defendant. Id.

attorney's fees, pursuant to O.C.G.A. § 13-6-11; and prejudgment interest pursuant to O.C.G.A. § 13-6-13.[3]  Id. at 14–15.

On January 8, 2021, Plaintiff filed a Request for Entry of Default by the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a).  [Doc. 14].  Plaintiff alleged therein that it effectuated service on Defendant on November 26, 2020, but that Defendant had failed to serve an answer or motion.  Id. at 1, 2.  The Clerk of Court entered default on January 11, 2021.  Plaintiff filed the instant Motion for Default Judgment on March 30, 2021.  [Doc. 17].

---

[3] In the Motion for Default Judgment, Plaintiff instead "request[ed] interest, costs, and fees under the [C]redit [A]pplication that Defendant executed as part of the . . . Agreement."  [Doc. 17-1, p. 8].  As a general rule, a plaintiff may not include new claims for relief in a motion for default judgment.  See Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1106 (11th Cir. 2015).  The Court, though, may review "the well-pleaded allegations in [the] complaint and the reasonable inferences from these allegations to determine whether Plaintiff has stated claims for relief."  Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011).  In the Complaint, Plaintiff alleged that Defendant signed the Credit Application and described therein the terms of that application, including provisions related to the payment of costs, attorney's fees and interest.  See Doc. 1, pp. 6–7.  Although the Complaint sought attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11 and interest under O.C.G.A. § 13-6-13, the prayer for relief requested in more general terms "[t]he costs and expenses for this action, including attorney's fees" and "[p]rejudgment interest."  Id. at 15.  Because the Complaint described in sufficient detail the terms of the Credit Application and included a request for costs, attorney's fees and interest, the Court does not consider the relief sought in the Motion for Default Judgment to "differ in kind from . . . what [was] demanded in the pleadings."  Fed. R. Civ. P. 54(c).  As such, the Court will consider in this Order Plaintiff's request for interest, costs and fees under the Credit Application, rather than under O.C.G.A. §§ 13-6-11 and 13-6-13.

## ANALYSIS

**A.     Legal Standard**

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default.  Fed. R. Civ. P. 55(b)(2).  Default judgments are typically disfavored.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015) (per curiam).  "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'"  Id. at 1245 (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  In other words, "[t]he court may grant default judgment [only] on those claims brought by [the] [p]laintiff that are legally sufficient and supported by well-pleaded allegations."  Earthlink, Inc. v. Log on Am., Inc., No. 1:02-CV-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988) ("In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint."); Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-CV-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). "Conceptually, then, a motion for default judgment is like a reverse motion to

dismiss for failure to state a claim," and the Court must determine "whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Surtain, 789 F.3d at 1245 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## B.     Breach of Contract

Plaintiff's sole claim is for breach of contract. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). Plaintiff contended in its Complaint that it entered into an agreement with Defendant and that the terms of that Agreement required Defendant to pay Plaintiff for orders within sixty days of their delivery. Plaintiff alleged further that in spite of its "due and repeated demands," Defendant "failed to timely pay [Plaintiff] the full amount owed on [Defendant's] account for PPE orders placed in connection with the . . . Agreement." [Doc. 1, p. 14]. According to Plaintiff, then, Defendant has breached the Agreement by failing to make timely payments, and Plaintiff has suffered damages of at least $238,645.36 as a result of this breach. Based on these facts, the Court finds that Plaintiff has stated a claim for breach of contract

sufficient to warrant entry of default judgment.  Graveling v. Castle Mortg. Co., 631 F. App'x 690, 698 (11th Cir. 2015) ("A default is warranted only when there is a sufficient basis in the pleadings for the judgment entered—that is, when the factual allegations of the complaint state a claim for relief.").

**C.   Damages**

Plaintiff seeks compensatory damages for the breach totaling $238,645.36.  Under Georgia law, damages for breach of contract are measured as "the amount which will compensate the injured person for the loss which fulfillment of the contract would have prevented or the breach of it entailed."  Lankford v. Tr. Co. Bank, 234 S.E.2d 179, 182 (Ga. Ct. App. 1977).  In a default judgment case, "[t]he plaintiff has the burden of proving the amount of damages."  Campbell v. Bennett, No. 1:18-CV-01064, 2020 WL 10574224, at *2 (N.D. Ga. Mar. 5, 2020).  A court may award damages following a defendant's default "only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"  Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam)); see also PNCEF, LLC v. Hendricks Bldng. Supply LLC, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010) ("Even in the default judgment context, '[a] court has an obligation to

assure that there is a legitimate basis for any damage award it enters.'" (alteration in original) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003))).

Plaintiff has provided a declaration and accompanying exhibit showing that its damages total $238,645.36 and that this figure represents the unpaid balance owed to Plaintiff by Defendant. See Doc. 17-3. Plaintiff has also alleged that this unpaid balance constitutes a breach of its Agreement with Defendant, namely of Defendant's "contractual obligations to pay [Plaintiff] within 'sixty (60) days' of delivery of [Defendant's] orders and according to 'all of [Plaintiff's] terms and conditions.'" [Doc. 1, p. 14]. Based on these facts, the Court concludes that Plaintiff has adequately stated a claim for compensatory damages. However, the Court observed a discrepancy in Plaintiff's documentation of those damages. Plaintiff provided a table summarizing Defendant's orders with past-due balances. See [Doc. 17-3, p. 3]. The first six rows of this table correspond to invoices provided by Plaintiff as an exhibit. See id. at 6–17. The data in the seventh row, however, does not match the corresponding invoice, numbered 9182051071. The seventh row of the table shows a PO number of 2020-1-F; a document date of June 23, 2020; a due date of June 23, 2020; and an amount of $49,656.67. Id. at 3. The invoice numbered 9182051071 shows a PO number of 2020-1-F, but it reflects an

invoice date of March 16, 2020; a due date of May 15, 2020; and an amount of $101,718.83. Id. at 18–19. The Court considers Plaintiff's compensatory damages to be "'capable of mathematical calculation.'" Adolph Coors Co., 777 F.2d at 1543 (quoting United Artists Corp., 605 F.2d at 857). However, the Court requires an accurate record supporting that calculation and accordingly instructs Plaintiff to provide corrected documentation.

Plaintiff also seeks interest under the terms of the Credit Application. Plaintiff alleged in the Complaint that the Credit Application subjected past due amounts "to an interest charge of 1 ½% per month or the highest rate allowable by law, not to exceed 1 ½%."[4] [Doc. 1, p. 7]. Plaintiff has calculated the interest owed to be $18,443.47. [Doc. 17-3, p. 4]. This amount represents interest accrued on the $238,645.36 balance at a rate of 1 ½% per month for the period of November 2020, when the parties ended their business relationship, to March 2021, when Plaintiff filed the Motion for Default Judgment. Id. The Court concludes that Plaintiff is owed interest under the terms of the Credit Application and agrees with Plaintiff's method of calculating that interest. However, the Court

---

[4] Plaintiff also provided the Credit Application as an exhibit accompanying the Motion for Default Judgment. See Doc. 17-5.

instructs Plaintiff to recalculate the amount of interest owed once Plaintiff has resolved the discrepancy in their calculation of compensatory damages.

Finally, Plaintiff seeks costs and attorney's fees under the terms of the Credit Application. Along with its Motion for Default Judgment, Plaintiff included a declaration from Plaintiff's attorney that described Plaintiff's legal fees as "in excess of $45,000." [Doc. 17-6, p. 1]. That declaration also noted that Plaintiff's costs totaled $1,244.65, comprised of the $400 filing fee and $844.65 incurred in serving Defendant with the Complaint. Id. at 4. Plaintiff has described its costs with sufficient specificity but has not done the same for its legal fees. The Court will thus defer an award of attorney's fees pending the receipt of adequate documentation.

## CONCLUSION

For the reasons state above, Plaintiff's Motion for Default Judgment [Doc. 17] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff against Defendant in the amount of $1,244.65 for costs. Plaintiff is **DIRECTED** to file documentation supporting the correct amount of compensatory damages, interest and attorney's fees requested in this action within fourteen days of the entry of this Order.

**SO ORDERED** this 3rd day of December, 2021.

J. P. BOULEE
United States District Judge